UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TIMOTHY CREECH,

                    Plaintiff,                                    DECISION AND ORDER
vs.                                                              05-CV-6017

THOMAS SCHOELLKOPH,

                    Defendant.
_____


        Plaintiff, a former inmate in the New York State Department of Correctional

Services ("DOCS") at Wende Correctional Facility ("Wende"), is suing DOCS employee

Hearing Officer Thomas Schoellkopf, alleging a violation of his Due Process rights as a

result of a Tier III disciplinary hearing. Now before the Court is Defendant's motion for

summary judgment (Docket No. 13) and Plaintiff's cross-motion for summary judgment

(Docket No. 21). For the reasons stated below, Plaintiff's application is denied, and

Defendant's is granted.

## BACKGROUND

        Unless otherwise noted, the following are the undisputed facts viewed in the light

most favorable to Plaintiff.  On March 16, 2004, during a routine cell inspection, Plaintiff

was ordered to exit his cell so that Corrections Officer Costanza ("Costanza") could

perform a search. When he left his cell, Plaintiff brought a potato chip bag with him.

Upon exiting the cell, Plaintiff was ordered to put his hands against the wall and wait to

be frisked by Costanza. Plaintiff did not comply and, instead, moved toward the front of

the gallery, claiming that he needed to throw out the potato chip bag. He was ordered to

stop, but again refused to comply. Costanza observed Plaintiff hand the potato chip bag to an inmate in another cell, inmate Saez[1] ("Saez"). The bag was subsequently confiscated from Saez. Costanza inspected the bag and found that it contained three flat pieces of metal, one of which was sharpened to a point at one end. In the Unusual Incident Report he prepared, Costanza described the contents of the bag as including "a weapon and material to make more weapons." (Defendants' [sic] Appendix to Local Rule 56.1 Statement of Material Facts, attached as Ex. A to Ex. 2, at 1.)

The pieces of metal were confiscated, and Plaintiff was immediately taken to the Special Housing Unit ("SHU"). He was charged with disobeying a direct order, possessing a weapon, and violating movement and frisk procedures.

On or about March 24, 2004, in connection with these charges, Plaintiff attended a Tier III disciplinary hearing at Wende, presided over by Defendant. Plaintiff requested two inmate witnesses to provide testimony. Defendant informed Plaintiff that both inmates had refused to testify, and produced two witness refusal forms, one of which was signed by one of the inmate witnesses, and the other of which was unsigned. Plaintiff inquired as to the reasons for the witnesses' refusal, but did not otherwise object during the hearing itself. Plaintiff speculated at his deposition that if Defendant had,

> allowed…other evidence, such as maybe the testimony of Officer Costanza to be adduced [sic] at that time, maybe he would have had a different perspective or a different light on the situation that was going on. [A]lso…, had he independently looked into the fact that there was no signature or stated reason on one of those Inmate Refusal—Witness forms—um, maybe it would have came [sic] to light that the witness did want to testify. But maybe the officer who was sent to get this inmate, maybe he never contacted him, and—uh, if that was the case—if that was

---

[1] No first name is given in the papers.

the case, then maybe that prisoner could have introduced some evidence that would have—uh, maybe perhaps vindicated me of those charges.

(Creech Dep. at 27–28, attached as Ex. A to Benitez Decl., attached as Ex. 1 to Defendants' [sic] Appendix to Local Rule 56.1 Statement of Material Facts.)

In making his decision, Defendant considered Plaintiff's testimony as well as other official reports, including a weapon recovery data sheet, to-from memoranda, and Costanza's written misbehavior report regarding the March 16, 2004, incident. Costanza was not called as a witness by either party. Although Plaintiff did deny the charges, the evidence before the Court does not suggest that Costanza, or any other corrections officer, submitted a false instrument, or falsified in any other manner the official reports. The March 24, 2004, hearing transcript was not produced during discovery. With regard to the one witness who did not sign the witness form, Defendant stated in a declaration that, "Corrections Officer Williams who sought the witnesses reported to me that the inmate refused to be involved." (Schoellkopf Decl. ¶ 7, attached as Ex. 2 to Benitez Decl., attached as Ex. 1 to Defendants' [sic] Appendix to Local Rule 56.1 Statement of Material Facts.)

Defendant found Plaintiff guilty on one of the charges against him, possession of a weapon, and sentenced Plaintiff to a term of six months in SHU. Plaintiff's disciplinary time was recorded as beginning on March 16, 2004.

On June 24, 2004, upon review of the case, SHU Director Donald Selsky ("Selsky") reversed and expunged both the result of the March 24, 2004, hearing and the penalty imposed, on grounds that Defendant made insufficient efforts to comply with Plaintiff's request for the two witnesses, and that Defendant did not give reasons for his actions on the record. Plaintiff was released from SHU on June 28, 2004, having served

105 days in total.

Plaintiff alleges that during his time spent in SHU, he suffered degradation, loss of liberty, damage to his health and family bonds, inferior hygiene conditions, as well as other damages not typically suffered by the general population of the prison in daily life. He states in his Response in Opposition to Defendant's Motion for Summary Judgment (Docket No. 21) that he was confined to his cell for 23 hours a day and lost over 40 pounds due to the inferior quality and portions of the food provided to him. He states that these and other conditions in SHU confinement constituted a significant and atypical burden.

In his complaint (Docket No. 1), Plaintiff also states that Defendant did not protect his right to call inmate witnesses and present evidence, alleging that Defendant made insufficient efforts to contact or secure testimony from Plaintiff's two requested inmate witnesses, and also failed to ascertain or provide a written record of the reasons for said witnesses' refusal to testify. Accordingly, Plaintiff claims that Defendant's disciplinary determination was not supported by a sufficient amount of evidence or testimony, and therefore exhibited bias and violated Plaintiff's due process rights. Plaintiff seeks $100,000.00 in compensatory damages and $100,000.00 in punitive damages against Defendant in his individual capacity.

## STANDARDS OF LAW

### *Summary Judgment Standard*

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). Where the non-moving party will bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once that burden has been met, the burden then shifts to the non-moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd* on other grounds *Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S. Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts.

*Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. Fed. R. Civ. P. 56(e).

Additionally, when a plaintiff is moving pro se, his pleadings must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the pro se plaintiff must still establish the existence of genuine issues of material fact to survive a motion for summary judgment; the pro se party's "bald assertion," when unsupported by evidence, is insufficient. *Lee v. Coughlin*, 904 F. Supp. 424, 429 (S.D.N.Y. 1995).

### *Irby notice*

Under *Irby v. New York City Transportation Authority*, 262 F.3d 412 (2d Cir. 2001), the Court is obligated to inform a *pro se* plaintiff that his failure to respond to a motion for summary judgment may result in the grant of judgment for the party seeking summary judgment, and dismissal of the case. Such a notice was sent in this case by the Clerk of the Court to Plaintiff on August 24, 2006 (Docket No. 20).

### *42 U.S.C. § 1983*

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  In order to state a claim under § 1983, plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993).

**DISCUSSION**

Defendant raises three separate arguments in support of summary judgment, each of which he contends is dispositive of the lawsuit. (Def.'s Mem. of Law at 2.) Defendant argues that: (1) Plaintiff's 105-day SHU confinement did not constitute an atypical and significant hardship requiring due process protection under *Sandin v. Conner*, 515 U.S. 472 (1995); (2) even if Plaintiff was entitled to due process protection, Defendant's decision at the March 24, 2004, hearing was supported by "some evidence," and therefore is not in violation of Plaintiff's due process rights; and (3) Defendant is entitled to qualified immunity. In response, Plaintiff has filed what he titled as "Notice of Opposition to Defendant's Summary Judgment Motion and Cross Motion for Summary Judgment." (Docket No. 21.) With regard to the question of Defendant's liability and the nature of Plaintiff's time spent in SHU, he claims that,

> H.O. Schoellkopf deprived me of due process of law by failing to protect my right to call witnesses, exhibiting bias and relying on hearsay reports to find me guilty in an unfair manner in violation of clearly established law of which reasonable officials knew or should have known thereby entitling me to summary judgment in my favor and requiring denial of summary judgment to the defendant.

(Pl.'s Rule 56 Statement in Support of Cross-Motion for Summary Judgment ¶ 26.) He lists in detail the specific hardships he endured and how they differed from what would have been expected had he remained in the regular population. However, as indicated, Defendant contends that Plaintiff's 105-day SHU confinement was not of sufficient duration to violate his protected liberty interests. (Def.'s Mem. of Law at 6.) He cites several cases in which district courts in this circuit have found stays in SHU of up to a year did not implicate a liberty interest. (*Id.*)

*Plaintiff's Liberty Interest*

A prisoner has "a due process right to a hearing before he may be deprived of a liberty interest on the basis of a misbehavior report." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997) (citation omitted). In regard to an inmate's claim that such due process rights were violated, the legal principles are well-settled:

> A prisoner asserting that he was denied due process in connection with prison disciplinary hearings that resulted in segregative confinement or a loss of privileges must make a threshold showing that the deprivation of which he complains imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L.Ed.2d 418 (1995).

*Orelvis v. State of New York Dept. of Correctional Services.* No. 05-CV-6498 CJS, 2009 WL 1663996 (W.D.N.Y. Jun. 15, 2009).

In *Welch v. Bartlett*, No. 94-CV-718S, 1998 U.S. Dist. LEXIS 22620 (W.D.N.Y. July 20, 1998), *rev'd,* No. 96-2778, 1997 WL 568660, 1997 U.S. App. LEXIS 23954 (2d Cir. Sept. 12, 1997) (summary order), the district court set out the standard for review of atypicality and hardship:

> It is clear that "after *Sandin*, in order to determine whether a prisoner has a liberty interest in avoiding disciplinary confinement, a court must examine the specific circumstances of the punishment." *Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir. 1997). This analysis "turns on the duration of the segregation and a comparison with the conditions in the general population and in other categories of segregation." *Arce v. Walker*, 139 F.3d 329, 337 (2d Cir. 1998).

Then in *Welch*, the district court marshaled the uncontested facts, including detailed statistics from DOCS and the plaintiff's description of the conditions in SHU, and concluded that the plaintiff's 90-day stay in SHU was not an atypical and significant hardship. In reversing, the Second Circuit found that despite the district court's careful

analysis of the uncontested facts, it failed to draw the correct conclusions. On remand, it appears that the district court simply assumed that the plaintiff's liberty interest was implicated, since the Second Circuit, on appeal after the remand, wrote:

> With respect to the due process claim, the District Court concluded that, even assuming plaintiff was deprived of a liberty interest, no reasonable trier of fact could conclude that plaintiff was not afforded all the process he was due. Substantially for the reasons stated in the District Court's Decision and Order of June 5, 2003, we affirm.

*Welch*, No. 03-0187, 125 Fed. Appx. 340, 342 (2d Cir. Mar. 2, 2005).

In this case, Defendant has not provided any factual basis upon which the Court could determine that Plaintiff's 105-day stay in SHU was not atypical. Plaintiff, on the other hand, has alleged the following, which Defendant has not contested:

> 8. While in SHU I suffered great mental pain, loss of liberty, loss of privileges, damage to my health, deprivation of adequate food and nutrition, loss of weight, loss of family bonds, and other degradation associated with SHU confinement.

> 9. If I had not been confined to SHU and instead had remained in general population, I would not have suffered the damages referred to in paragraph 8, *supra*, and herein because the comparative conditions of confinement in general population are much less burdensome than those in SHU confinement.

> 10. While in SHU I was not allowed to have contact visits with family members and instead could only have non-contact visiting, whereas in general population I would have been allowed contact visiting. This caused a burden and strain on relations with my family visitors and myself.

> 11. While in SHU the food served was served in hard plastic, usually stained and compartmentalized food trays with rationed portions much smaller than those available in general population messhalls. Also, general population messhall food utincils [sic] are clean and not stained. The SHU food is often cold when served as well whereas food served in general population messhalls is served hot over the counter.

> 12. Inmate[s] in SHU are not allowed to buy food, vitamins or health products from [the] commissary whereas in general population inmates may purchase a variety of vitamins, health foods and hygiene products. In fact, SHU inmates are only issued a hotel size bar of soap once a week on shower days. SHU inmates are not allowed to have wash buckets and

may only have clothing washed one time per week whereas general population inmates can have wash buckets, purchase soap and detergent as well as a variety of other hygiene materials such as skin cream, [V]aseline, lubricants necessary for maintaining healthy skin especially for blacks who often suffer from dry skin without such skin lubricants, all of which are denied to SHU inmates.

13. While in SHU there was a constant smell of feces and urine that did not exist in general population housing.

14. While in SHU I was confined to my cell for 23 hours a day whereas in general population I was allowed to attend programs for substantial hours a day from approximately 8:00 a.m. to 11:00 a.m., from 1:00 p.m. to 3:00 p.m., and recreation from 6:00 p.m. to 9:45 p.m. on weekdays; and on weekends was allowed recreation from 1:00 p.m. to 5:00 p.m. or similar hours. Also, general population inmates are allowed to attend the facility messhall and are served hot meals over the counter in much larger portions than are allowed in SHU confinement.

15. In fact, the very purpose of the SHU confinement is in part to punish for disciplinary reasons and to deter inmate misbehavior and violation of facility/DOCS rules; whereas inmates in general population are not subject to such deliberate punishments.

16. The SHU officers often harass SHU inmates merely because of their SHU status which oftentimes would not occur in general population status.

17. I entered SHU weighing over 200 pounds and lost weight of about 40 pounds due to the conditions of SHU confinement, being unable to obtain adequate food to maintain my weight and health, worrying, anxiety, *etc.*, all of which would not have occurred had I been in general population confinement.

18. When I entered SHU I had lengthy hair which I lost while in SHU due to poor hygiene conditions and lack of available necessities to keep my hair up. Had I been in general population, this loss would not have occurred since I could have obtained and purchased necessary hair grooming material via prison commissary.

19. While in SHU there was no meaningful educational or other programs or literature available to me whereas in general population I would have had access to a variety of reading literature through facility library or packages from family or friends who are allowed to send food, books, magazines, *etc.*, to general population inmates.

20. While in SHU I was issued stained mattresses and not allowed adequate cell cleaning materials. Cell cleaning occurs one time per week with dirty water that is not changed and is used to mop all cells. Also, the toilet brushes are not sanitary and the cell bars and sinks are dirty as well

as the toilets.

21. To my knowledge there is never any general cleaning inspection of the SHU cells whereas in general population cleaning inspections occur and cell standards must be met or disciplinary charges are brought against general population inmates.

(Pl.'s Statement of Facts ¶¶ 8–21.) In *Welch*, the panel determined that "conditions of hygiene are far inferior for SHU prisoners than for the general population," that the plaintiff there, as does Plaintiff here, alleged that "SHU prisoners, unlike general population, receive inadequate amounts of…soap and cleaning materials, a filthy mattress, and infrequent changes of clothes," and that "confinement for 23 hours a day" is a great difference from the experience in general population. *Welch*, 196 F.3d at 394. More importantly, the panel in *Welch* held that the relevant comparison "is not between the duration of plaintiff's SHU sentence and the SHU terms received by others who were convicted of misbehavior," but, rather, between the plaintiff and "similar deprivations … typically endured by other prisoners, not as a penalty for misbehavior, but simply as the result of ordinary prison administration." *Id.* Accordingly, Defendant's list of cases describing various stays in SHU as not being atypical or significant are of no impact on the requirements imposed by *Welch* and *Sandin*.

Since the prior case law relied heavily on other cases' determinations of what length of time in SHU constituted, or did not constitute, an atypical and significant hardship, and *Welch* clearly rejects that simple comparison, the Court cannot conclude on the basis of the list of cases cited in Defendant's papers that Plaintiff did not suffer an atypical and significant hardship.

However, in order to evaluate Defendant's other two grounds in support of summary judgment, the Court will simply assume, without deciding the issue, for the

purposes of this motion only, that Plaintiff's 105-day stay in SHU constituted an atypical and significant hardship sufficient to raise a protected liberty interest. *See Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) ("we assume, without deciding, that Sira's six-month confinement in the special housing unit imposed an atypical hardship entitling him to due process."); *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004) ("We assume, without deciding the issue, that Luna did suffer an 'atypical and significant hardship'.").

### Due Process and Prison Disciplinary Proceedings

Although prison inmates are not protected by "the full panoply of rights" that protect a defendant in a criminal prosecution, due process does require a variety of procedural safeguards before beginning a sentence of disciplinary segregation. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). These safeguards include sufficient notice, pre-hearing assistance, a fair and impartial hearing officer, a reasonable opportunity to call witnesses and present documentary evidence, a written disposition, and a sentence supported by some reliable evidence. *Wolff*; *Mitchell v. Senkowski*, 158 Fed. Appx. 346, 2005 WL 3429422 (2d Cir. Dec. 14, 2005). The Second Circuit has held that a uniform refusal to permit inmates to call other prisoners as witnesses is unjustifiable. *McCann v. Coughlin*, 698 F.2d 112, 123 (2d Cir. 1983). On the other hand, an inmate need not be permitted to call a witness if doing so would be futile, or if the witness would be unnecessary. *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993); *Scott v. Kelly*, 962 F.2d 145, 146 (2d Cir. 1992). If the inmate is prevented from calling a witness or offering evidence, however, the burden of justifying that action is on the defendant. *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991).

With regard to Plaintiff's requested inmate witnesses, he contends that Defendant did not afford him a reasonable opportunity to call them, thereby depriving him of his due process rights. Plaintiff reasons that his witnesses, had they testified, may have introduced unspecified different perspectives into the case, which might have benefitted him. (Creech Dep. at 27.) Additionally, Plaintiff argues that Defendant did not sufficiently justify the lack of witnesses. Defendant counters that the witnesses in question were indeed asked to testify, and that they declined to do so, without giving reasons. One signed a refusal form, the other declined to sign said form. Defendant claims that he had no further obligation to pursue the testimony of these witnesses, and that the lack of witness testimony was justified by the refusal forms.

The evidentiary proof on the pending motions shows that the two inmate witnesses refused to participate in the hearing. Plaintiff has not presented any evidentiary proof in admissible form to raise a material question of fact on this point. *Compare Contras v. Coughlin*, 199 A.D.2d 601, 602 (N.Y. App. Div. 3d Dept. 1993) (emphasis added) ("The hearing transcript reveals that petitioner made a request to call the inmate victim of the alleged assault as his witness after his assigned inmate assistant advised petitioner that the inmate victim *would* give testimony. At the hearing, a correction officer testified that he had witnessed the inmate victim sign a blank inmate refusal form and that, when questioned, the inmate victim refused to give any reason for his unwillingness to testify."). Although there may have been an institutional expectation for Defendant to take more initiative in procuring witness testimony, the fact that he made his decision on the violation without the testimony does not necessarily violate Plaintiff's due process rights. "The hearing officer has no duty to cross-examine anyone,

including the reporting officer." *Perez v. Wilmot*, 67 N.Y.2d 615, 617 (1986); *People ex rel. Vega v. Smith,* 66 N.Y.2d 130, 141 (1985) ("Nor does due process of law require that disciplinary board members interview the officers who wrote the misbehavior reports."). Rather, the requirement is that decisions on the disciplinary hearing level be made on the basis of "some evidence," a standard that does not necessitate witness testimony. *Superintendent v. Hill*, 472 U.S. 445, 453-54 (1985). The standard for "some evidence" is not precise. The New York Court of Appeals, in describing the standard, wrote:

> Hearsay is admissible in such a proceeding, and if sufficiently relevant and probative may constitute substantial evidence. While the quantum of evidence that rises to the level of "substantial" cannot be precisely defined, the inquiry is whether "in the end the finding is supported by the kind of evidence on which responsible persons are accustomed to rely in serious affairs." (*National Labor Relations Bd. v Remington Rand*, 94 F.2d 862, 873 [Hand, J.], *cert denied* 304 U.S. 576.) Put another way, substantial evidence "means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact." (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 180, *supra*.)

*People ex rel. Vega*, 66 N.Y.2d 130, 140 (1985). Inquiry should not focus on whether the evidence is hearsay, but instead on whether it is "sufficiently relevant and probative." *Matter of Perez v. Wilmont*, 67 N.Y.2d 615, 616-17 (1986); *People ex rel. Vega*.

Defendant relied on "the unusual incident report packet (Exhibit A) consisting of the inmate misbehavior report (2 pages) prepared by the corrections officer who had first hand knowledge of the specific allegations, a weapon recovery data sheet, to-from memoranda, and plaintiff's testimony." (Schoellkopf Decl. ¶ 9.) He contends that, as the sentence imposed was indeed supported by "some evidence," Accordingly, he

maintains that Plaintiff was, therefore, not deprived of his due process rights. (Def.'s Mem. of Law at 7.) Case law supports this argument: "A written misbehavior report can constitute substantial evidence of an inmate's misconduct." *Foster v. Coughlin*, 76 N.Y.2d 964, 966 (1990) (citations omitted).

Additionally, although the "some evidence" standard has been expanded to include "*any evidence* in the record that supports" the disciplinary ruling*,* the evidence in question must be reliable. *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004) (quoting *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985) (emphasis added); *Taylor v. Rodriguez*, 238 F.3d 188, 194 (2d Cir. 2001); *Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir. 2000). Here, the misbehavior report was made by the officer personally involved in the March 16, 2004, incident, and is based on his first hand observation, and contains a detailed account of that incident, including the time, place, circumstances, and names of participants. There is no evidence of any motive for Costanza to implicate Plaintiff falsely, nor reason for Defendant to question the credibility of Costanza's incident report. Although Costanza did not testify at the hearing, Defendant was not given any reason to doubt the nature of the evidence already provided. Thus, the Court concludes that Defendant's decision at the March 24, 2004, disciplinary hearing was indeed supported by a sufficient degree of reliable evidence. Consequently, the outcome of the hearing was not the result of a violation of Plaintiff's due process rights.

### Defendant's Entitlement to Qualified Immunity

Even if the Court determined that Defendant's ruling was *not* supported by "some evidence," Defendant would still be entitled to qualified immunity. The doctrine of qualified immunity shields state officials from civil liability for actions performed in the

course of their duties if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). This doctrine protects officials acting "in ways they reasonably believe to be lawful." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Hence, a defendant is not liable if he did not violate clearly established law or it was objectively reasonable for him to believe that he was not violating clearly established law." *Luna v. Pico*, 356 F.3d at 490.

In determining whether a right has been clearly established, (1) the law must be defined with reasonable clarity, (2) the Supreme Court or the Second Circuit must have recognized the right, and (3) the right must be sufficiently clear so that a reasonable defendant would have understood from the existing law that his conduct was unlawful. *Anderson v. Recore*, 317 F.3d 194, 197 (2d. Cir. 2003). Additionally, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates the right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Even assuming a state official violates a plaintiff's constitutional right, the official is still afforded protection if he objectively and reasonably believed that he was acting lawfully. *See Hunter v. Bryant*, 502 U.S. 224, 229 (1991) ("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'").

Therefore, even if the "some evidence" standard was not satisfied, Defendant nevertheless had qualified immunity against liability, as he did not violate clearly

established law. *See Johnson v. Goord*, 305 Fed. Appx. 815, 2009 WL 57030 (2d Cir. Jan. 9, 2009) ("[N]either this circuit nor the Supreme Court has clearly defined standards for determining what constitutes 'some evidence' in the context of prison disciplinary hearings; rather, decisions have addressed the problem piecemeal, focusing on the discrete problems raised by the facts of particular cases.") (quoting *Sira v. Morton*, 380 F.3d 57, 81 (2d Cir. 2004)).

Therefore, the Court finds that Defendant is protected by the doctrine of qualified immunity, since at the time of his decision a reasonable hearing officer could have considered the "some evidence" requirement to be satisfied by Plaintiff's testimony and the detailed written incident reports.

## CONCLUSION

The Court grants Defendant's motion for summary judgment (Docket No. 13), and denies in whole Plaintiff's cross-motion for summary judgment (Docket No. 21). Defendant's motion on the issue of qualified immunity is granted, as is his motion on the issue of whether the Defendant's decision pursuant to the March 24, 2004 disciplinary hearing was supported by "some evidence." Accordingly, the Clerk is directed to enter judgment for Defendant and close the case.

IT IS SO ORDERED.

Dated:   January 20, 2010
         Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge